| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Vs.** | ) | **ORDER** |
| | ) | |
| **ANNA MARIE POSTELL COCHRAN.** | ) | |
| | ) | |
| _____ | ) | |

      **THIS MATTER** came before the undersigned pursuant to a Motion for Presentence Release (#464) filed by Defendant's attorney. In the motion, Defendant requests that she be released on terms and conditions of presentence release pursuant to, what she contends, are exceptional circumstances as set forth under 18 U.S.C. § 3145(c). At the call of this matter on for hearing it appeared that Defendant was present with her counsel Rich Cassady and the Government was present through AUSA Don Gast. From the evidence offered and the arguments of counsel for Defendant, the Court makes the following findings:

      **Findings.** The Defendant called as a witness Heather Shehan. Ms. Shehan is presently detained at the Cherokee County, North Carolina detention facility in Murphy, North Carolina. Ms. Shehan is a cellmate with Defendant and has been such since Defendant was detained after pleading guilty to the offense of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846. Defendant entered

a plea of guilty on June 13, 2016 and at that time, the undersigned entered an Order (#375) detaining Defendant, pursuant to the provisions of 18 U.S.C. § 3143(a)(2).

Ms. Shehan testified that when Defendant first came to the detention facility, Defendant could walk, read, use the phone, and was self-sufficient. Thereafter, Ms. Shehan started noticing that the Defendant had spells of dizziness which the Defendant thought was vertigo. Ms. Shehan then noticed that the physical condition of Defendant began to deteriorate over the months of July, August and September. The Defendant began to have to have assistance to go to the bathroom, which was provided by Ms. Shehan and other inmates. Defendant could not shower by herself and over the two week period beginning on September 19, 2016, Defendant was having to sit in a wheelchair to take her showers. The Defendant and Ms. Shehan are confined twenty-two hours out of every twenty-four hour day in their cell. It appears from the testimony of Ms. Shehan that the majority of the care for Defendant has been provided by Ms. Shehan and the two other cellmates in the cell pod.

Dr. Kevin Cormier was called as a witness for Defendant. Dr. Cormier was qualified as an expert witness as both a physician and as a radiologist by the Defendant. Dr. Cormier testified that an MRI had been performed upon the brain and cervical spine of the Defendant on September 22, 2016. Dr. Cormier analyzed the report of the MRI and found that there were "multiple foci of white matter disease involving the bilateral cerebral hemispheres, cerebellum and brainstem, some of

which exhibit incomplete peripheral ring enhancement." (Def's Exhibit 1)  It is Dr. Cormier's opinion that Defendant now has multiple sclerosis, or  brain cancer.  Dr. Cormier further testified that for a definitive diagnosis, a neurologist would have to perform an examination of the cerebral fluid of the Defendant and also a blood test of the cerebral and spinal fluid of Defendant.  Without these tests being made, a definitive diagnosis cannot be made and appropriate treatment for the Defendant cannot be administered.  From the testimony of Dr. Cormier, multiple sclerosis cannot be cured, but there is a type of treatment that can be administered to a person at an early stage of the disease that can forestall and delay the ultimate fatal effects of multiple sclerosis for many years.  It is important that Defendant be examined by a neurologist as rapidly as possible and that the definitive testing be performed so that appropriate treatment can be provided to the Defendant, either for the principal diagnosis of multiple sclerosis or the secondary diagnosis of brain cancer.

Misty Postell was called as a witness by the Defendant.  Ms. Postell is Defendant's mother.  Ms. Postell has made arrangements for Defendant to be cared for at Ms. Postell's home on a twenty-four hour a day basis.  Ms. Postell advised the Court that if Defendant is released, she will immediately make arrangements for an examination by a physician and request a referral as rapidly as possible for Defendant to a neurologist so the appropriate testing of Defendant can be performed.  Ms. Postell testified that Defendant has qualified for medical care which will be paid

for by Medicaid.

Deputy U.S. Marshal, Mark Chapman, was called as a witness by the Government. Marshal Chapman is the supervising deputy of the Marshal Service for the Asheville and Bryson City divisions of the Western District of North Carolina. Marshal Chapman testified he had been contacted by Defendant's counsel, Rich Cassady, over the past several weeks and had been advised that Defendant's condition was rapidly deteriorating. Marshal Chapman had made arrangements so the Defendant could have the MRI testing performed. He has also tried to make an appointment for Defendant with a neurologist, but has been advised it will be three to six months before Defendant can see a neurologist. If treatment was provided through the United States Marshal Service, this would be at no cost to Defendant.

**Discussion.** 18 U.S.C. § 3145(c) provides, in part, as follows:

 **(c) Appeal from a release or detention order.**---

A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate.

Motions for release, pursuant to 18 U.S.C. § 3145(c), have been referred to the undersigned for determination. As guidance in making the determination, the undersigned has reviewed United States v. Vilaiphone, 2009 WL 412958 (2009 W.D.N.C.) where United States District Judge Martin Reidinger defined what is

4

meant by "exceptional reasons".

Courts generally have defined "exceptional reasons" as circumstances which are "clearly out of the ordinary, uncommon, or rare." See United States v. Larue, 478 F.3d 924, 926 (8th Cir. 2007) (finding defendant's compliance with terms of pretrial release, lack of criminal record, payment of child support, and continued employment were not exceptional reasons warranting release); United States v. Lea, 360 F.3d 401, 403 (2d Cir. 2004) ("Exceptional circumstances exist where there is 'a unique combination of circumstances giving rise to situations that are out of the ordinary.'") (quoting United States v. DiSomma, 951 F.2d 494, 497 *2d Cir. 1991)). The fact that the Defendant has cooperated with the Government and has complied with the terms and conditions of his pretrial release do not constitute exceptional reasons warranting his continued release pending sentencing. See United States v. Little, 485 F.3d 1210, 1211 (8th Cir. 2007) ("It is not exceptional to expect every defendant to timely appear in court and to obey the court's order concerning pretrial conditions of release. Nor it is clearly out of the ordinary, uncommon or rare for defendants to cooperate in the investigation of their criminal acts."). Similarly, the Defendant's lack of a significant criminal history and his gainful employment, while commendable, do not rise to the level of "exceptional reasons." See Lea, 360 F.3d at 403-04 ("There is nothing 'exceptional about going to school, being employed, or being a first-time offender, either separately or in combination."). Finally, while the Court is cognizant of the hardships that the Defendant's detention will create for his immediate family, such hardships are common to nearly every case involving a term of imprisonment and thus do not qualify as "exceptional reasons" under § 3145(c). See United States v. Garcia, 340 F.3d 1013, 1022 (9th Cir. 2003) ("Hardships that commonly result from imprisonment do not meet the standard."); United States v. Mahabir, 858 F.Supp 504, 508 (D.Md. 1994)("A defendant's incarceration regularly creates difficulties for him and his family. Courts have found that such purely personal considerations do not constitute exceptional reasons within the meaning of Section 3145(c).")

Applying "exceptional reasons" to the circumstances which now face this

Defendant, the undersigned finds that the physical condition of Defendant and her

potential to have either multiple sclerosis or brain cancer, is an event that is "clearly out of the ordinary, uncommon, or rare" for a Defendant who is confined and is awaiting sentencing. It appears to the undersigned there is an urgency that testing and treatment be provided for Defendant as rapidly as possible. Although the United States Marshal Service has done an admirable job in obtaining an MRI for Defendant, it is the Court's belief that if Defendant is released on terms and conditions of presentence release, a more immediate appointment can be obtained for Defendant with a neurologist and appropriate testing can be performed so treatment can begin for either multiple sclerosis or cancer. The undersigned is of the opinion that such is an exceptional circumstance that merits the immediate release of Defendant, that Defendant meets the conditions of release as set forth in 18 U.S.C. 3143(a)(1) and, as a result, the undersigned will grant the motion of Defendant.

## ORDER

**IT IS, THEREFORE, ORDERED**, that Motion for Presentence Release

(#464) is **ALLOWED** and Defendant be released on terms and conditions of presentence release.

Signed: October 7, 2016



Dennis L. Howell